IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES L. BRYANT and JACK DELIDDO, <br><br> Plaintiffs, <br> v. <br> MICHAEL MATVIESHEN and DOES 1 through 25, inclusive, <br><br> Defendants. | 1:12-CV-00572  AWI SKO <br><br> ORDER ON PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER <br><br> (Doc. No. 6) |

This case stems from a written agreement (the "MJC Agreement") entered into by Plaintiffs Charles L. Bryant and Jack Deliddo ("Plaintiffs"), residents of Stanislaus County, California; and Defendant Michael Matvieshen, a resident of British Columbia, Canada ("Defendant").[1]  Plaintiffs allege causes of action for breach of contract, fraud, negligent misrepresentation, suppression of fact, promise made without intent to perform, conversion, constructive trust, declaratory relief, alter ego relief, and injunctive relief.  Currently pending before the Court is Plaintiffs' ex parte application for a temporary restraining order.  For the

---

[1] Personal jurisdiction over Defendant Matvieshen appears to be established by the venue clause in the MJC Agreement, which provides: "This agreement shall be governed by the laws of the State of California without regard to conflict of laws provisions thereof.  The Parties hereby irrevocably agree to the exclusive jurisdiction of the state and federal courts sitting in the State of California."  See Compl., Ex. A.

reasons that follow, the Court will grant Plaintiffs' motion and set a briefing schedule for a preliminary injunction.

## ALLEGATIONS & BACKGROUND

In 2009, Plaintiff Deliddo formed Rooftop Energy, LLC ("Rooftop"), a company specializing in large scale commercial solar projects. See Compl. ¶ 8. Shortly thereafter, Plaintiff Deliddo sold a 51% interest in Rooftop to Plaintiff Bryant. Id. ¶ 9. Plaintiffs entered into discussions with Defendant regarding assistance with obtaining solar panels and financing for various large-scale projects, including projects with General Motors ("GM"). In 2010, Defendant offered to purchase Rooftop in exchange for cash and stock in ICP Solar Technologies, Inc. ("ICP"), a corporation controlled by Defendant. Id. ¶ 13. The parties contemplated that ICP would fulfill the GM projects initiated by Rooftop. Id. Plaintiffs agreed to a sale of 100% of their membership interests in Rooftop to ICP for $3 Million in vested cash payouts, a 20% stock interest in ICP, and employment/consulting agreements (the "Rooftop Agreement"). Id., Declaration of Jack Deliddo ("Deliddo Decl.") ¶ 6; Declaration of Charles L. Bryant ("Bryant Decl.") ¶ 9, Ex. A. Plaintiffs, however, never received the cash payment promised, and ICP turned out to have cash flow problems, making it a poor candidate for the potential GM projects. Id. ¶ 14.

Defendant represented to Plaintiffs that Sunlogics, Inc., a Canadian corporation controlled by Defendant, was in a better position than ICP to pursue the business strategies and GM projects initiated by Rooftop. Id. ¶ 16. Plaintiffs agreed to allow Defendant to transfer Rooftop from ICP to Sunlogics, Inc., and for their consulting contracts to be assigned to Sunlogics, Inc., in exchange for a 30% interest for each Plaintiff in Sunlogics Inc. Id. 16; Bryant Decl. ¶¶ 9-11; Deliddo Decl. ¶¶ 7-8. Throughout this period, Defendant continued to confirm to Plaintiffs that the three of them were in business together, and that they would own all of the corporations in which they participated together 40-30-30, but that Defendant would be entitled to vote 50% of the stock and Plaintiffs would each vote 25%. See Compl. ¶ 19.

After developing and modifying a business plan, Plaintiffs and Defendant eventually executed the MJC Agreement, under which the parties agreed to the allocation of their respective

ownership interests in various companies in which they agreed to participate and operate together. See Compl., Ex. A; Bryant Decl. ¶ 11, Ex. B; Deliddo Decl. ¶¶ 11, 14-15. Among other things, the MJC Agreement provides that Defendant was "the directing shareholder" of Sunlogics, Plc (the parent company of Sunlogics Inc.) and Salamon Group, Inc. ("Salamon"). See Compl., Ex. A ¶ 1. The MJC Agreement further provides that Defendant was "holding shares in trust" for Plaintiffs, and that Defendant "agrees to transfer 60% of such ownership interests held by [Defendant], 30% to [Deliddo] and 30% to [Bryant]" in Sunlogics, Plc ("Sunlogics") and Salamon. Id. The MJC Agreement also provides that Defendant will have a 40% interest and Plaintiffs will each have a 30% interest "in any and all companies in which they participate together presently or in the future. . .." Id. ¶ 2.

The Sunlogics and Salamon shares were supposed to be transferred to Plaintiffs at the time that a merger was closed between Sunlogics (and its subsidiaries) and Phoenix Solar Holdings Corp. See Compl. ¶ 28. However, Defendant transferred only a portion of the promised shares. See Compl. ¶ 38, Bryant Decl. ¶¶ 24-31; Deliddo Decl. ¶¶14-17. Defendant knew there was considerable pressure to close the merger quickly, and he offered numerous excuses why the shares should remain held beneficially subject to later adjustment between the individuals to comply with the MJC Agreement. See Compl. ¶¶ 29, 36.

During the time the merger was pending, Plaintiffs contend Defendant convinced them to agree to the formation of two offshore companies, Millennium Trends International, Inc., a Bahamas company ("Millennium"), and Maverick Ventures SA, a Swiss company ("Maverick"), that would also be subject to the MJC Agreement. See Compl., ¶ 30, Bryant Decl. ¶¶ 18, 25; Deliddo Decl. ¶ 16.

Through January 2012, Defendant continued to make promises regarding the adjustments and to reassure Plaintiffs of his intent to complete the promised transfers of shares. See Bryant Decl. ¶¶ 13, 33, Ex. M. However, in March 2012, after Defendant was no longer CEO of

Sunlogics,[2] Defendant refused to transfer the shares and began making threats to transfer the shares to other parties. Id. ¶ 33-40.

On April 10, 2012, Plaintiffs filed a verified complaint and ex parte application for TRO and preliminary injunction in the Superior Court for the State of California, County of Fresno. A hearing on the TRO was set for April 12, 2012. On April 12, 2012, Defendant filed a Notice of Removal in this court. On April 25, 2012, Plaintiffs filed the instant ex parte application for a temporary restraining order ("TRO") and an order to show cause why a preliminary injunction should not issue.[3]

As part of the TRO request, Plaintiffs submitted declarations that indicate *inter alia*: (1) the Sunlogics shares held by Defendant were originally subject to an Investor Rights Agreement that contained a lock-down provision; however, that provision expired on March 10, 2012, enabling Defendant to transfer the shares;[4] (2) Defendant recently issued a press release that Millennium has entered into a Memorandum of Understanding to sell Sunlogics shares to Salamon; (3) Millennium was purportedly formed on behalf of Defendant and Plaintiffs through a third party incorporator who was a close friend of Defendant, but Plaintiffs never received copies of the organizational documents for Millennium; (4) the third party incorporator recently informed Bryant that Defendant may be taking actions to have the Sunlogics shares held by Millennium transferred into Defendant's name; (5) there is a danger that Defendant is pledging or transferring Salamon shares beneficially owned by Plaintiffs to finance various material ventures not approved by Plaintiffs; (6) Plaintiffs recently discovered that the purchase of Salamon was financed through Sunlogics Inc. and Rooftop Energy, LLC, a subsidiary of Sunlogics Inc., and that Defendant created a last-minute amendment to the Purchase Agreement to add his own name

---

[2] Plaintiffs allege Defendant was dismissed by the Board of Directors from his positions as CEO and Chairman of the Board of Sunlogics, Plc and Sunlogics Inc for cause in November 2011. He was also forced to resign as a director of Sunlogics, Plc and Sunlogics Inc.

[3] Plaintiffs represent that counsel for Defendant, Robert Noblin, was provided with notice via telephone and e-mail on April 25, 2012, that the TRO documents were being filed electronically on April 25, 2012. See Declaration of Cathleen A. Cowin, ¶¶ 2 and 3.

[4] Sunlogics, Plc is a United Kingdom company whose shares are traded on the Frankfurt exchange.

individually such that Sunlogics Inc. and Rooftop Energy, LLC may have a claim to shares.  See Bryant Decl.; Deliddo Decl.

**LEGAL STANDARD**

Under Rule 65(b), a court may issue an ex parte temporary restraining order only if:  (1) it clearly appears . . . that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.  Fed. R. Civ. Pro. 65(b); Reno Air Racing Ass'n v. McCord, 452 F.3d 1126, 1130 (9th Cir. 2006).  Rule 65(b)'s requirements are "stringent," and temporary restraining orders that are granted ex parte are to be "restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." Granny Goose Foods, Inc. v. Brotherhood of Teamsters, 415 U.S. 423, 438-39 (1974); McCord, 452 F.3d at 1131.

The substantive standard for granting a temporary restraining order is the same as the standard for entering a preliminary injunction.  Bronco Wine Co. v. U.S. Dep't of Treasury, 997 F.Supp. 1309, 1313 (E.D. Cal. 1996); Lockheed Missile & Space Co. v. Hughes Aircraft Co., 887 F.Supp. 1320, 1323 (N.D. Cal. 1995).  A plaintiff seeking a preliminary injunction must establish: (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest.  Winter v. Natural Res. Def. Council, Inc., 129 S.Ct. 365, 374 (2008); Park Vill. Apt. Tenants Ass'n v. Mortimer Howard Trust, 636 F.3d 1150, 1160 (9th Cir. 2011).  "Injunctive relief . . . must be tailored to remedy the specific harm alleged." Park Vill., 636 F.3d at 1160.

**DISCUSSION**

A temporary restraining order is warranted.  First, Plaintiffs have shown a likelihood of success on their breach of contract claim.  Under California law, a complaint for breach of

contract must show: (1) the existence of a contract, (2) plaintiff's performance or excuse for non-performance; (3) defendant's breach, and (4) damages to plaintiff therefrom. See Acoustics, Inc. v. Trepte Construction Co., 14 Cal. App. 3d 887, 913 (Cal. App. 1971). Here, the claims are based on the written MJC Agreement executed by Defendant and Plaintiffs. See Compl., Ex. A. From the complaint, it appears the MJC Agreement memorialized a series of transactions designed to compensate Plaintiffs for their sale of Rooftop to ICP, for which they were never paid. Plaintiffs contend that Defendant breached the MJC Agreement by failing to transfer the shares at issue. Plaintiffs further allege that they are entitled to specific performance of the MJC Agreement because the breach cannot be adequately compensated for in damages. See Sheppard v. Banner Food Products, 178 P.2d 455, 458, 78 Cal. App. 808, 813 (Cal. App. 1947). Here, the shares hold not only a monetary value, but represent ownership interests in the various entities, coupled with unique voting and control rights. The benefit of the bargain that Plaintiffs anticipated involved long-term investment in the stock. Thus, estimating the value of the stock is impracticable, as there is insufficient volume of stock trading on the market to replace the shares promised by Defendant. Plaintiffs have sufficiently demonstrated likelihood of success on the merits of their breach of contract claim and their entitlement to specific performance.

Second, without the TRO, Plaintiffs will suffer irreparable harm if the shares at issue are not preserved. A preliminary injunction may be granted to preserve a fund or property as to which the parties have conflicting claims, so that such assets are preserved and may be the subject of a final decree in the case. See Deckert v. Independence Shares Group, 311 U.S. 282, 290 (1940); Hendricks v. Bank of Am., N.A., 408 F.3d 1127, 1141 (9th Cir. 2005). Here, Plaintiffs allege that Salamon, a company presently controlled by Defendant, recently issued a press release stating that Millennium shareholders have signed a Memorandum of Understanding for the sale of Sunlogics shares. Plaintiffs contend, however, that they are entitled to 60% of the shares of Millennium and 50% of the voting rights, and therefore Defendant voted shares beneficially owned by Plaintiffs without authorization. Plaintiffs allege that Defendant was making efforts to have control of Millennium investment accounts, or the company, transferred to Defendant's individual name. Plaintiffs further allege that Salamon press releases indicate

6

Defendant is issuing warrants for Salamon shares, and contemplating transfer of Sunlogics shares. Plaintiffs have sufficiently demonstrated irreparable harm in the absence of a TRO.

Third, the balance of equities tips in Plaintiffs' favor. The degree of harm that would be suffered if the shares at issue are transferred out of Defendant's control into the hands of third parties outweighs any potential harm to Defendant. Moreover, Defendant's interests are protected because a preliminary injunction would preserve the status quo by leaving the shares at issue under his control. Any potential harm suffered by Defendant in the event that the transfer or sale of his stock is wrongfully enjoined or restrained would be compensated by the security filed by Plaintiffs pursuant to this Order. See Fed. R. Civ. P. 65(c). While the relief requested predominantly affects the interests of the parties, it appears that the interests of the public shareholders of both Sunlogics, Plc and Salamon Group, Inc. are affected. However, Plaintiffs' allegations suggest a potential cloud on title as to the contemplated transactions that may have an adverse effect on other investors and stock values. Thus, the public interest is aligned with Plaintiffs in this case and the balance of the equities tips in favor of Plaintiffs.

## **CONCLUSION**

Plaintiffs move for a TRO that would restrain Defendant from taking any actions to sell, transfer, hypothecate or encumber or take any action that would devalue in any manner the shares at issue. After considering the application, the Court finds Plaintiffs have sufficiently established a likelihood of success, irreparable injury, and that the balance of hardships and public interest weigh in their favor. Further, considering the notice afforded Defendant in the state court action, as well as e-mail and telephone communications from Plaintiffs' counsel regarding the instant application, additional notice and opportunity to be heard is not necessary. As such, the Court will grant Plaintiff's request for a temporary restraining order.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiffs' application for a temporary restraining order is GRANTED;
2. Defendant Michael Matvieshen, his agents, servants, employees, assignees, attorneys and all those acting in concert or participation with him are RESTRAINED AND ENJOINED from taking any actions to sell, transfer,

        hypothecate or encumber or take any action that would devalue in any manner the shares of common stock of Sunlogics Plc ("Sunlogics") a United Kingdom corporation, Salamon Group, Inc. ("Salamon") a Nevada corporation, Millennium Trends, Inc. ("Millennium"), a Bahamas corporation, or Maverick Group, Inc. ("Maverick') a Swiss corporation, at issue in this case. Without limitation, this specifically extends to entering into any definitive agreement for the transfer of stock from Millennium or Maverick.

3. Defendant shall appear on May 10, 2012, at 10:00 a.m. in Courtroom No. 2 and SHOW CAUSE why a Preliminary Injunction should not be granted;

4. Defendant shall file an opposition to Plaintiffs' motion for preliminary injunction on or by 3:00 p.m. on May 3, 2012;

5. Plaintiffs shall file a reply on or by 3:00 p.m. on May 7, 2012;

6. The Temporary Restraining Order is effective as of April 27, 2012 at 2:35 p.m.. Plaintiffs shall post a bond in the amount of $2,000.00 (two thousand dollars) as security for this temporary restraining order, as required by Fed. Rule Civ. Proc. 65(c), no later than 3:30 p.m. on May, 1 2012;

7. Should Plaintiffs fail to timely file the above security, then Plaintiffs' motion for temporary restraining order SHALL BE DEEMED TO BE DENIED IN FULL; and

8. Plaintiffs shall forward a copy of this order to Defendant immediately, and shall file with the Court a certificate of service of this order on Defendant.

IT IS SO ORDERED.

Dated:   April 27, 2012

CHIEF UNITED STATES DISTRICT JUDGE